IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01166-KLM

DANIEL CARRILLO RODRIGUEZ, on his own behalf and on behalf of all others
similarly situated,

      Plaintiff,

v.

5830 RESTAURANT CORP.,
SMOKIN DAVE'S BBQ, CORP.,
SMOKIN DAVE'S, LLC,
7522 RESTAURANT CORP.,
5374 RESTAURANT CORP.,
HOUSE OF Q CORP., and
DAVID OEHLMAN,

      Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the parties' **Joint Motion for Preliminary Approval of Class and Collective Action Settlement** [#61] and on Plaintiff's unopposed **Motion for Attorney Fee** [#62].[1]  No Responses were filed.  The Court has reviewed the Motions [#61, #62], the exhibits thereto (including the Settlement Agreement [#61-1], the proposed Settlement Notice [#61-2], the Declaration of Brandt Milstein [#62-1], and the Declaration of Mari Newman [#62-2]), the entire case file, and the applicable law, and is sufficiently advised in the premises.  In the Motions [#61, #62], the parties ask the Court to: (1) certify a stipulated Fed. R. Civ. P. 23 Settlement Class defined as "All hourly

---

[1]  Pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2(d), the parties in this civil action have consented to have the undersigned conduct all proceedings.  *See* [#24, #34].

employees who worked for Defendants between April 28, 2015 and April 28, 2021"; (2) grant preliminary approval of the parties' Settlement Agreement [#61-1]; (3) approve the parties' Settlement Notice [#61-2]; (4) set a final fairness hearing; and (5) preliminarily approve the parties' proposed attorney fee award. *Motion* [#61] at 1-2; *Motion* [#62] at 1. For the reasons set forth below, the Motions [#61, #62] are **GRANTED**.

## I. Background

### A.      Procedural History

Plaintiff filed this action for unpaid wages on April 28, 2021. *See Compl.* [#1]. Plaintiff alleges that Defendants failed to pay him and his co-workers overtime wages and failed to provide them with rest periods during their shifts. *Second Am. Compl.* [#57] ¶¶ 15-24. Plaintiff pled collective violations of the federal Fair Labor Standards Act ("FLSA") and Fed. R. Civ. P. 23 class violations of Colorado wage statutes. *Id.* ¶¶ 63-86.

The parties engaged in early but ultimately unsuccessful settlement discussions. *Motion* [#61] at 2. Following resolution of a key discovery dispute, the parties moved to stay the case pending company-wide settlement negotiations, which the Court granted. *See* [#53, #54]. On October 20, 2022, the parties mediated the case with the assistance of Judge Susan Macey of the Judicial Arbiter Group and reached terms of settlement. *Motion* [#61] at 2. The settlement contemplates a round of FLSA notices and a stipulated Fed. R. Civ. P. 23 class as to Plaintiff's state law claims. *Id.* The settlement provides for actual damages to be awarded to those employees who remain members of the Rule 23 Class and additional FLSA liquidated damages for those who opt-in to the FLSA portion of the action. *Id.*

As part of their settlement process, the parties moved the Court to adopt their stipulation to conditional certify a FLSA collective action, which the Court granted. *See* [#58, #60]. On November 9, 2022, the FLSA notice was disseminated to Defendants' employees across the six locations at issue. *Motion* [#61] at 3. On January 23, 2023, the FLSA Notice period ended. *Id.* Now that the opt-in period has closed, the parties propose to issue the attached Settlement Notice [#61-2] to the company-wide Rule 23 Class. *Id.* In the Motion [#61], which was filed before the close of the opt-in period, the parties note: "After the close of the FLSA opt-in period, the Parties will know which of the Rule 23 Class Members opted into the FLSA action and are entitled to additional liquidated damages. At that point, the Parties will be able to include an accurate calculation of each Class Member's recovery in the Rule 23 Settlement Notice." *Id.*

**B.    Summary of the Settlement Agreement [#61-1]**

To determine the value of the claims asserted by Plaintiff, the FLSA Opt-In Plaintiffs, and each Rule 23 Class Member, the parties reviewed all available time-worked and wage payment records for each of Defendants' six Smokin' Dave's locations. *Motion* [#61] at 3. Defendants produced nearly 20,000 pages of documentary evidence and hundreds of thousands of wage and hour data points via Excel spreadsheet production to cover the six-year statutory recovery period at issue. *Id.* (citing *Sobolewski v. Boselli & Sons, LLC*, 342 F. Supp. 3d 1178, 1189 (D. Colo. 2018) (applying a 6-year statute of limitations to Colorado Minimum Wage Act claims)). Defendants' data analyst created a complex overtime damages model based on Defendants' wage and hour documents and data, which Plaintiff and his counsel thoroughly analyzed and checked against the produced documents and data. *Motion* [#61] at 3. Plaintiff added to Defendants'

damages model provisions for rest period damages, liquidated damages, and penalties, as well as attorney fees and costs.  *Id.*

Based on the wage and hour records and the data analyst's verified computations, and taking into account the risks and costs of continued litigation, the parties negotiated the Settlement Agreement [#61-1].  *Id.* at 4.  The parties believe the agreement to be a fair and reasonable settlement of the FLSA collective and the Rule 23 class claims.  *Id.* The settlement provided that Defendants would make a payment of $720,000.00 into a Settlement Fund to be administered by a Class Administrator to compensate Plaintiff, the Opt-In Plaintiffs, and the Members of the Rule 23 Class who do not opt-out for their damages, inclusive of attorney fees and costs and an incentive award.  *Id.*  In addition to, and separately from the Settlement Fund, Defendants agreed to pay all settlement administration costs, all mediation costs, and the employer's portion of required withholding and payroll taxes.  *Id.*

To facilitate settlement of Plaintiff's state law claims, the parties propose and stipulate to the Fed. R. Civ. P. 23 certification of a class defined as: "All hourly employees who worked for Defendants between April 28, 2015 and April 28, 2021."  *Id.*  The parties propose that within twenty-one days of the Court's entry of an order granting final approval to this settlement, the Settlement Administrator will mail settlement checks to the Class Members, a check for attorney fees and costs to Plaintiff's counsel, and an incentive/service award check in the amount of $10,000.00 to named Plaintiff Daniel Carrillo.  *Id.*  The parties further agree that any funds remaining from uncashed settlement checks will not revert to Defendants.  *Id.*  Rather, any settlement funds from checks that are not negotiated withing ninety days of issuance would be re-distributed, with ninety

percent of such funds re-distributed on a pro-rata basis to those Class Members who timely negotiated their settlement checks, and the remaining 10% of such funds to be paid *cy pres* to the Rocky Mountain Immigrant Advocacy Network.  *Id.*  Plaintiff and the Class Members who do not opt-out of the settlement will release Defendants from all claims which were pled in this action.  *Id.*  Plaintiff, individually, will also release Defendants from all potential claims arising from his employment with Defendants.  *Id.*  Finally, Class Counsel proposes an attorney fee award of thirty-three percent of the Settlement Fund.  *Id.*

## II.  Analysis

### A.    Fed. R. Civ. P. 23 Class

Approval of a class action settlement occurs in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement.  *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009)).  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address any timely objections to the fairness, reasonableness, or adequacy of the settlement terms.  *Id.*; Fed. R. Civ. P. 23(e)(2).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (internal quotation marks and citations

omitted).  Therefore, a proposed class action settlement is preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives."  *In re Motor Fuel*, 286 F.R.D. at 492.  "The standards for preliminary approval of a class settlement are not as stringent as those applied for final approval."  *Id.*

Certification of a class action requires the four elements of Fed. R. Civ. P. 23(a) to be met as well as one of the three subsections of Fed. R. Civ. P. 23(b).  Here, the parties assert that Fed. R. Civ. P. 23(b)(3) is met.  *Motion* [#61] at 5.  In addition, the parties must meet the requirements of Fed. R. Civ. P. 23(e) before a class action settlement agreement may be approved.  In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997), the United States Supreme Court addressed the issue of class settlement, holding that a district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but all other requirements for certification must still be satisfied.  The Court addresses each portion of Rule 23 in turn, beginning with the elements of class certification.

### 1.    Fed. R. Civ. P. 23 Certification

#### a.    Fed. R. Civ. P. 23(a)

First, Fed. R. Civ. P. 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."  Here, there are 254 putative members of the Class. *Motion* [#61] at 6.  In a similar case, *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 WL 2149602, at *2 (D. Colo. June 1, 2011), the Court found the joinder of between fifty and three hundred pizza delivery drivers to be impractical.  In another case, *A-W Land Co., LLC v. Anadarko E&P Co. LP*, No. 09-cv-02293-MSK-MJW, 2012

WL 4463869, at *5 (D. Colo. Sept. 27, 2012), the Court found one hundred potential class members to be "a number that certainly prevents effective joinder . . . ."  Thus, the Court here finds that the Settlement Class is sufficiently numerous such that joinder would be impracticable, and that the numerosity requirement of Fed. R. Civ. P. 23(a)(1) is met.

Second, Fed. R. Civ. P. 23(a)(2) requires "there [to be] questions of law or fact common to the class."  "A finding of commonality requires only a single question of law or fact common to the entire class."  *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010).  Here, the proposed class features two basic questions of law and fact that are common to every member of the class: (1) whether they were subject to a company-wide practice of non-payment of overtime premiums, and (2) whether they were subject to a company-wide practice of failure to provide rest breaks.  *Motion* [#61] at 6; *see Bass*, 2011 WL 2149602, at *2-3 (certifying a Colorado Minimum Wage Act class action based in part on similar common questions).  Thus, the Court here finds that the proposed Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2).

Third, Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class."  *Gianzero v. Wal-Mart Stores, Inc.*, No. 09-cv-00656-REB-BNB, 2010 WL 1258071, at *3 (D. Colo. Mar. 29, 2010).  "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."  *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).  Here, Plaintiff challenges Defendants' application of an alleged overtime and rest period-avoidance policy, conduct Plaintiff claims was

universally applied to the proposed Class of employees.   *Motion* [#61] at 7.   Because Plaintiff's claims challenge the same conduct under the same legal and remedial theories as do the claims of the absent Class, his claims are typical of the Class's claims.   Thus, the Court here finds that the proposed Class satisfies the typicality requirement of Fed. R. Civ. P. 23(a)(3).

Finally, Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."   "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole."   *Maez v. Spring Auto. Grp.*, LLC, 268 F.R.D. 391, 396-97 (D. Colo. 2010) (internal citation omitted).   Courts consider two issues when determining whether the adequacy requirement is met: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.   *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (quotation omitted).   "Absent evidence to the contrary, a presumption of adequate representation is invoked.   Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration . . . ."   *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998).

Here, regarding the first question, the named Plaintiff has the same interest in vindicating his wage rights as do absent members of the putative class.   *Motion* [#61] at 8.   Further, Plaintiff's counsel does not have any conflict of interest with the members of the putative class.   *Id.*   Thus, because there is no divergence between the interests of

Plaintiff, counsel, and the proposed class, this question is resolved in favor of a finding of adequacy.  *See Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 WL 2317243, at *3 (D. Colo. May 28, 2013).

Regarding the second question, "the experience of the proposed class representative's chosen counsel in similar previous litigation has been held an important factor favoring adequacy of representation.   With regard to whether a lead plaintiff and his counsel will vigorously prosecute the action on behalf of the class, 'the experience and competence of the attorney representing the class may inform the court's analysis.'" *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 654 (W.D. Okla. 2012) (internal citations omitted).  Here, Plaintiff selected specialized, bilingual counsel with extensive experience in litigating the minimum labor standards claims of low-wage immigrant workers.  *Motion* [#61] at 8.  Plaintiff's counsel has successfully served as class counsel in numerous certified Rule 23 class actions and 29 U.S.C. § 216(b) collective actions similar to this one.  *Id.*  Plaintiff and his counsel have and will continue to prosecute this action vigorously on behalf of the class.  Thus, this question is also resolved in favor of a finding of adequacy.  The Court therefore finds that the proposed Class satisfies the adequacy requirement of Fed. R. Civ. P. 23(a)(4).

Accordingly, the Court finds that all four elements of Fed. R. Civ. P. 23(a) have been met.

### b.    Fed. R. Civ. P. 23(b)(3)

Fed. R. Civ. P. 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  This rule further outlines four "matters pertinent to these findings": "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  In other words, the Court "must determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members . . . .  Class wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof."  *United Food and Commercial Workers Union*, 281 F.R.D. at 655 (quotation omitted).

Here, the case involves a controversy spanning Defendants' hourly workforce and recurring each time a worker worked overtime hours and each time a worker was denied a rest break.  *Motion* [#61] at 9.  The representative Plaintiff's claims and those of the class arise from the same legal grievances, and questions common to these claims regarding whether Defendants' non-payment of overtime and denial of rest periods policies violated the law will be litigated repetitively if these claims are not aggregated. *Id.*  "In terms of efficiency for the parties and for the court, a class action is superior to individual suits in the effort to achieve a fair and efficient adjudication of the plaintiffs' claims."  *Bass*, 2011 WL 2149602, *3-4.

Further, the class action is a superior method of adjudicating the instant case because the absent class members have shown no interest in controlling the litigation of separate actions; because no other litigation regarding this controversy has been commenced; and because concentration of claims here is desirable as all Defendants reside in and all claims arose in this judicial district. *Motion* [#61] at 9 (citing Fed. R. Civ. P. 23(b)(3)(A)-(C)). The class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of low-wage workers, most of whom lack English proficiency. *Motion* [#61] at 9. A class action is generally superior method where the small claims of parties with limited resources are otherwise unlikely to be pursued. *Belote*, 2013 WL 2317243 *4; *Maez*, 268 F.R.D. at 397; *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 482 (D. Colo. 1998). Thus, the Court finds that the class action is the superior vehicle for the fair and efficient settlement of this controversy. Accordingly, the Court further finds that the requirements of Fed. R. Civ. P. 23(b)(3) are met, and that this action should be certified as a class action under Fed. R. Civ. P. 23.

## 2. Fed. R. Civ. P. 23 Settlement

Under Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class— or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." The authority to approve a settlement of a class action suit is committed to the sound discretion of the trial court, and settlement approval will not be set aside absent an abuse of discretion. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Courts consider four factors to determine whether a proposed Rule 23 class action settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2)

whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) whether the parties' judgment is that the settlement is fair and reasonable. *Rutter & Wilbanks Corp.*, 314 F.3d at 1188.

Regarding whether the proposed settlement was fairly and honestly negotiated, this case was litigated, and the proposed settlement was reached, in the context of Plaintiff's federal class and collective action lawsuit. *Motion* [#61] at 10. The parties were represented by counsel with extensive experience in wage and hour class litigation. *Id.* The parties reviewed all available time-worked and wage payment records. *Id.* Defendants hired a data analyst to compute the Class Members' damages over the six-year statutory period. *Id.* Counsel for Plaintiff reviewed voluminous documentary and electronic data productions and checked the analyst's computations against Class Members' actual wage and hour records. *Id.* The parties engaged in contested settlement negotiations. *Id.* Counsel utilized their experience in similar class employment matters, and thoroughly analyzed the legal and factual issues, as well as each party's level of litigation risk, to arrive at a fair and reasonable compromise. *Id.* at 10-11. Thus, the Court finds that the proposed settlement was fairly and honestly negotiated.

Regarding whether serious questions of law exist, the parties state that whether the Class may recover six years' worth of wages, or just two or three, is an unsettled question of Colorado law. *Motion* [#61] at 11 (citing cases applying 6-year statute of limitations to Colorado Minimum Wage Act claims (*Sobolewski v. Boselli & Sons, LLC*, 342 F. Supp. 3d 1178, 1189 (D. Colo. 2018); *Cordova-Gonzalez v. TW Lath-N-Stucco*,

*Inc.*, 21-cv-01617-CMA-KMT, 2021 WL 5086065, at *2 (D. Colo. Nov. 2, 2021); *Pacheco v. Somip, Inc.*, 2020CV33915, at 1 (Denver Cnty. July 19, 2022); *Keck v. Redrock Foods, Ltd. Co.*, 2020cv30002 at 3 (Montezuma Cnty. July 13, 2021); *Phillips v. Subway of Cherry Creek, Inc.*, No. 2020cv33717, at 2) and cases applying a 2- or 3-year statute of limitations (*Balle-Tun v. Zeng & Wong, Inc.*, No. 21-cv-03106-NRN, 2022 WL 1521767 (D. Colo. May 13, 2022); *Schroetlin v. Alpine Disposal Inc.*, Case No. 2020CV31813 (Colo. Dist. Ct. January 29, 2021); *Sayers v. Liberty Oilfield Servs.*, 2020CV30168 (Colo. Dist. Ct. April 20, 2021)).  This question, which presented the potential for expensive and prolonged appellate motions practice, is a serious one that counsels toward a mediated resolution.  Thus, the Court finds that a serious question of law exists.

Regarding whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, the parties all face risk regarding the applicable statute of limitations and the potential for protracted appellate practice.  *Motion* [#61] at 11.  In addition, Defendants contest whether Class Members took rest periods.  *Id.*  The value of the six-year settlement and the payment of rest period damages make the immediate recovery provided by the settlement outweigh the possibility of future relief.  *Id.*

Finally, regarding whether it is the parties' judgment that the settlement is fair and reasonable, the parties, with the advice of experienced counsel, are confident that the settlement is fair and reasonable.  *Id.*  Thus, all factors favor finding that the proposed Rule 23 settlement is fair and reasonable.  Accordingly, the Court preliminarily approves the settlement as fair and reasonable for the purposes of Fed. R. Civ. P. 23(e).

**B.      Fair Labor Standards Act Collective**

A district court may approve an FLSA collective action settlement after "scrutinizing settlement for fairness" and deciding whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). "[I]n determining whether to approve an FLSA settlement, the Court considers whether (1) the FLSA settlement is reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees." *Herring v. Thunder Ridge Trucking & Filtration, Inc.*, No. 15-cv-00062-RM-KLM, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

### 1.     Bona Fide Dispute

Parties seeking approval of an FLSA settlement may establish that a bona fide dispute exists by presenting: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, *1 (D. Colo. Feb. 24, 2014).

Here, regarding the first factor, "a description of the nature of the dispute," Defendants dispute that they failed to pay overtime and contend that any violations of the FLSA were not willful. *Motion* [#61] at 12.

Regarding the second factor, "a description of the employer's business and the type of work performed by the employees," the parties represent that Defendants own

and operate six Smokin' Dave's restaurants along the Colorado front range, and that the settling opt-in Plaintiffs were hourly employees in Defendants' restaurants. *Id.* at 12-13.

Regarding the third factor, "the employer's reasons for disputing the employees' right to a minimum wage or overtime," Defendants do not dispute their employees' right to be paid minimum and overtime wages pursuant to the FLSA, but they do dispute whether they failed to pay overtime premiums in violation of the FLSA. *Id.* at 13.

Regarding the fourth factor, "the employees' justification for the disputed wages," the employees allege that Defendants did in fact fail to pay overtime premiums in violation of the FLSA. *Id.*

Regarding the fifth factor, "each party's estimate of the number of hours worked and the applicable wage," the parties agree, based on their review of the opt-in Plaintiffs' time records, on the computation of wages owed. *Id.*

Weighing these five factors, the Court finds that the parties are resolving a bona fide dispute between them. *See Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013) (stating that "this case is not sham litigation . . . it very much involves a bona fide dispute between adversarial opponents").

### 2.    Fair and Equitable Settlement for all Parties

"With respect to the second factor, this Court evaluates, first, whether the settlement is fair and reasonable, and, second, whether the settlement undermines the purposes of the FLSA." *Herring*, 2016 WL 7868819, at *2.

### a.    Whether the Settlement Is Fair and Reasonable

In determining whether an FLSA settlement is fair and reasonable, courts consider the same factors applied in a Rule 23 settlement fairness analysis, already discussed

above.  *Baker*, 2014 WL 700096, *2 (citing *Rutter & Wilbanks Corp.*, 314 F.3d at 1188).

Thus, the Court finds that the settlement here is fair and reasonable.

### b.   Whether the Settlement Undermines the FLSA

To find that an FLSA settlement does not undermine the FLSA, the Court examines

whether the proposed settlement adheres to the statute's purpose, which is to protect

employees' rights from employers who generally wield superior bargaining power.  *Baker*,

2014 WL 700096, *2.  "In considering whether the FLSA has been undermined, this Court

looks at (1) the presence of other similarly situated employees, (2) the likelihood that the

plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-

compliance with the FLSA."  *Herring*, 2016 WL 7868819, at *2.

Regarding the first factor, "the presence of other similarly situated employees," all

Defendants' employees who were similarly situated to Plaintiff during the applicable

statutory periods were included in the FLSA and Rule 23 Classes.  *Motion* [#61] at 14.

The hybrid nature of Plaintiff's complaint ensured that all of Defendants' employees who

were allegedly disadvantaged by their employers' superior bargaining power, and who

were allegedly denied overtime wage payments and rest periods, would be included in

the collective settlement in the employees' favor.  *Id.*  By including and recovering

damages for all similarly-situated employees, this lawsuit countered the bargaining power

advantage normally enjoyed by Defendants.  *Id.*  The Court therefore finds that this first

factor supports a finding that the settlement effectuates rather than undermines the

purpose of the FLSA.

Regarding the second factor, "the likelihood that the plaintiff's circumstances will

recur," given that Defendants are paying a high price for their alleged violations of the

FLSA, they have a strong incentive to refrain from engaging in conduct violative of the statute in the future.  *Id.*  Further, because Defendants' employees have now participated in a successful collective FLSA enforcement action, and because the collective's members are in contact with their counsel who specializes in FLSA litigation, Defendants are aware that any future violations of the statute would be very likely to come to light and be litigated, further deterring future violations.  *Id.*  The Court therefore finds that this second factor supports a finding that the settlement effectuates rather than undermines the purpose of the FLSA.

Regarding the third factor, "whether the defendant has a history of non-compliance with the FLSA," Defendants represent that they have never been part of an enforcement action brought by any governmental agency or private plaintiff seeking to enforce the FLSA.  *Id.*  Because there is no history of non-compliance with the FLSA, the Court finds that this third factor supports a finding that the settlement effectuates rather than undermines the purpose of the FLSA.

Weighing these three factors, the Court finds that the settlement is fair and equitable to all parties.

### 3.    Reasonable Award of Attorney Fees

Plaintiff seeks approval of counsel's fee award totaling 33% of the Settlement Fund.  *Motion* [#61] at 15; *Motion* [#62] at 1.  As previously stated, Plaintiff and Class Counsel secured a common fund settlement of $720,000.00 for 254 low-wage and largely immigrant restaurant workers, a significant company-wide victory for these employees who were denied overtime wages and rest breaks.  *Motion* [#62] at 1.  Defendants do not object to the fee sought.  *Id.* at 2.

The FLSA provides that "[t]he court in [an FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" where plaintiffs prevail. 29 U.S.C. § 216(b).  Attorney fees are "an integral part of the merits of FLSA cases," *Shelton v. M. P. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987), and the ability of FLSA claimants to recover a reasonable attorney fee is crucial to the statute's enforcement scheme.  *See, e.g., Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir. 1994) (the "purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances" and to encourage "the vindication of congressionally identified policies and rights").

"In [wage and hour] class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund."  *Shaw v. Interthinx, Inc.*, 13-cv-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015) (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)).  Courts generally award attorney fees in common fund cases "based on a percentage of the common fund obtained for the benefit of the class," thus "proportionately spreading payment of attorney fees among the class members."  *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *2-3 (D. Colo. Dec. 22, 2010); *Anderson v. Merit Energy Co.*, Nos. 07-cv-00916-LTB-BNB, 07-cv-01025-REB-MJW, 2009 WL 3378526, at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created.").

Courts review percentage attorney fee awards for reasonableness, looking to the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express,*

*Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), to guide their review. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) ("Because [the *Johnson*] factors measure the attorneys' contributions, they are [] appropriate in setting and reviewing percentage fee awards in common fund cases."). The *Johnson* factors are: "(1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorney, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."  488 F.2d at 717-19.

### a.   Time and Labor Required

Counsel dedicated significant resources and time to investigating, developing, litigating, and negotiating the settlement of this case. *Motion* [#62] at 3.  At the outset of this 1.5-year litigation, Plaintiff and Class Counsel initiated early settlement discussions with Defendants. *Id.*  Negotiations broke down because Plaintiff insisted on negotiating a settlement as to all hourly workers in all six of Defendants' Smokin' Dave's restaurants, while Defendants intended to limit the negotiations to three locations. *Id.*  As a result, counsel drafted and filed Plaintiff's Amended Complaint [#22] and served two rounds of written discovery on Defendants to build the case against the entirety of Defendants' restaurant enterprise. *Id.*  Counsel litigated a discovery dispute regarding Plaintiff's access to records from all six of Defendants' restaurant locations, including full briefing

through a sur-reply and a hearing before the Court regarding Plaintiff's access to company-wide discovery. *Id.*

Prevailing on the company-wide discovery issue, counsel was able to convince Defendants to return to the negotiating table with the understanding that a settlement would encompass all of Defendants' hourly employees at all of their restaurants. *Id.* at 4. Prior to mediation, Defendants produced nearly 20,000 pages of documentary evidence and hundreds of thousands of wage and hour data points via Excel spreadsheet production. *Id.* Defendants' data analyst created a complex overtime damages model based on Defendants' wage and hour documents and data, which Plaintiff and his counsel thoroughly analyzed and checked against the produced documents and data. *Id.* Plaintiff added to Defendants' damages model provisions for rest period damages, liquidated damages and penalties, as well as attorney fees and costs. *Id.*

In addition, prior to mediation, counsel drafted the Joint Motion to Adopt Parties' Stipulation of Conditional Certification of a Fair Labor Standards Act Collective Action [#58], which the Court later granted, *see Order* [#60]. The parties mediated the matter with the assistance of Judge Susan Macey of the Judicial Arbiter Group on October 20, 2022, and reached terms of settlement. *Motion* [#62] at 4. Counsel spent considerable time and effort preparing himself and Plaintiff for mediation and, after mediation, in researching and drafting a Settlement Agreement [#61-1], a Joint Motion for Preliminary Approval of Class and Collective Action Settlement [#61], a proposed Settlement Notice [#61-2], and the Motion for Attorney Fee [#62]. Further, given the Court's ultimate decision below preliminarily approving the settlement, counsel will spend additional time administering the settlement, drafting a motion for final approval thereof, addressing any

objections to the settlement, and preparing for and attending a final fairness hearing, an estimate of all of which is included in counsel's invoice. *Motion* [#62] at 4.

Counsel's invoice shows that he spent 212.75 hours investigating, litigating, and negotiating the resolution of this case. *Decl. of Milstein* [#62-1]. Counsel has extensive experience representing low-wage workers in wage class actions and bills at a rate of $500 per hour, which is reasonable for an attorney with his level of experience in the Denver market. *See Decl. of Newman* [#62-2] ¶ 9 ("Mr. Milstein obtained an indisputably excellent result for the class of low-wage workers in this case. The hourly rate for which he seeks the Court's approval is what I would consider reasonable for the caliber of legal work performed."). Counsel's lodestar is $106,305.00 in fees and $449.10 in costs. *Motion* [#62] at 5. The $240,000.00 requested contingency fee represents an enhancement of counsel's lodestar by a multiplier of 2.2 which is below the range of fee multipliers approved in Colorado in similar cases and is reasonable given the result obtained for the Class. *See Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases in the District of Colorado approving lodestar multipliers ranging between 2.5 and 4.2).

### b.   Novelty and Difficulty of the Questions Presented by the Case

From the outset of this case, Plaintiff aimed to ensure that not only he, but his co-workers as well, would recover all the unpaid overtime wages they are due. *Motion* [#62] at 5. As a result, Plaintiff brought the case as a hybrid § 216(b) Collective Action and Rule 23 Class Action. *Id.* The combination of these class devices was intended to maximize the percentage of those employees affected by Defendants' violations of federal and state wage law who would recover wages due. *Id.* The hybrid nature of this

case required extensive analysis and planning on the part of Class Counsel regarding litigation strategy and formulas and damages distributions, the end results of which are reflected in the proposed Class Action Settlement Agreement [#61-1].  *Id.*  As such, due to Plaintiff's justified desire to ensure that he and his non-participating co-workers recover the wages they were due, this case presented difficult questions which Counsel spent significant time navigating to a successful conclusion.  *Id.*

### c.  The Skill Requisite to Perform the Legal Service Properly

Counsel focuses his practice on representing low-wage workers, like the Class Members here, and has sixteen years of experience litigating class wage cases under state and federal law.  *Decl. of Milstein* [#62-1].  Most of the Class Members are immigrants to the United States.  *Motion* [#62] at 6.  Counsel is fluent in Spanish, holds a master's degree in Latin American studies, and lived and worked in Mexico and Central America for years, all of which equips him with the cultural competency to represent Latino immigrants in the courts of the United States.  *Decl. of Milstein* [#62-1].  As evidenced by the favorable result achieved, counsel had the requisite cultural and legal skill to perform the service required to bring this complex litigation to a successful close for Plaintiff  and the class. *Motion* [#62] at 6.

### d.  The Preclusion of Other Employment by the Attorney

Class Counsel, having dedicated 212.75 hours to the prosecution of this matter, spent time on this case that could have been spent on other worthwhile cases.  *Motion* [#62] at 6.  The Court has recognized the inherent preclusion of other work implicit in acceptance of a large and complex class action for low-wage workers:

> Attorneys attempting to handle a large class such as this are precluded by the ticking of the clock from taking certain other cases given that they have

> decided to take a chance on a possible recovery in a contingent fee case rather than strictly working on paid hourly wages.  There is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts.  This case involved workers who were neither highly skilled nor highly paid, making a contingent fee arrangement even more risky . . . .

*Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013).   Here, counsel spent significant hours on this case, remuneration for which was entirely contingent on the outcome of the matter.  *Motion* [#62] at 6.  Counsel could have spent those hours on guaranteed fee-generating work. *Id.*

### e.    The Customary Fee

Plaintiff seeks an attorney fee award of thirty-three percent of the common fund settlement.  *Motion* [#62] at 7.  Courts in the Tenth Circuit often approve awards representing an equal or greater percentage of the settlement common fund in FLSA cases.  *See, e.g.*, *Whittington*, 2013 WL 6022972, at *6 (finding in an FLSA matter that "[t]ogether the fees and costs amount to approximately 39% of the fund as a whole.  This is within the normal range for a contingent fee award."); *Lucken Family Ltd. Partnership, LLLP*, 2010 WL 5387559, at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing *Vaszlavik v. Storage Tech. Corp.*, No. 95–B–2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (stating that the "requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable"); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation*, No. CIV 89-822-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the

range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").  Thus, the Court finds that the 33% award sought is within the range of customary fee awards in similar cases.  *See Motion* [#62] at 7.

### f.    Whether the Fee is Fixed or Contingent

Counsel represents Plaintiff on a contingency fee basis.  *Motion* [#62] at 7.  The representation agreement entered into between counsel and Plaintiff provides that, in the event that Plaintiff prevailed Counsel would recover the greater of his FLSA lodestar fees or 33 1/3% of the overall recovery.  *Id.*  Had Plaintiff not prevailed, counsel would have not recovered any fees.  *Decl. of Milstein* [#62-1] ¶ 12.  Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case.  Access to the courts would be difficult to achieve without compensating attorneys for that risk."  *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010).  Most of the low wage workforce, including the Plaintiff and Class Members here, "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation."  *Motion* [#62] at 8 (quoting *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990).  The risk associated with the contingency fee arrangement here supports the Court's approval of the thirty-three percent award sought.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. at 1151 ("A contingent fee . . . is designed to reward counsel for taking the risk of prosecuting a case

without payment during the litigation, and the risk that the litigation may be unsuccessful.").

### g.   Time Limitations Imposed by the Client or the Circumstances

The *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.  488 F.2d at 718.  Because this case proceeded through a normal course of litigation, Plaintiff believes that this factor is not relevant to the instant case.  *Motion* [#62] at 8 (citing *Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1151).

### h.   The Amount Involved and the Results Obtained

The $720,000.00 settlement in this case represents a significant recovery of actual and liquidated damages for the 254 low-wage workers involved in this case.  *Motion* [#62] at 8.  Given the results obtained, this factor weighs in favor of a finding of reasonableness of the thirty-three percent award sought.  *Id.*

### i.   The Experience, Reputation, and Ability of the Attorney

Class Counsel focuses his practice on, and has extensive experience in, representing low-wage immigrant workers in wage and hour class and collective action litigation.  *Decl. of Milstein* [#62-1]; *see Martinez v. Rial de Minas, Inc.*, No. 16-cv-01947-RM-KLM, [#54] at 16 (D. Colo. Mar. 4, 2019) (stating with respect to Attorney Brandt Milstein: "The Court finds this case involves technical federal wage statutes and regulations and requires skills to work with immigrant Spanish-speaking individuals, and that Plaintiff's counsel has shown he has the skills necessary to perform the legal service properly."); *Lopez v. Highmark Constr., LLP*, Case No.: 17-cv-01068-CMA-MLC, [#38] at 9 (D. Colo. Mar. 29, 2018) (recognizing Attorney Brandt Milstein's "experience and expertise in wage and hour litigation").  Counsel has shown his ability by achieving the

result obtained for the Class.  *Motion* [#62] at 9.  The Court finds that this factor also weighs in favor of approval of the thirty-three percent award.

### j.      The "Undesirability" of the Case

Because Plaintiff and the members of the Class are low-wage immigrant workers without the means to hire counsel on an hourly fee basis, this case could only have been litigated via a contingency fee arrangement.  *Motion* [#62] at 9.  The "undesirability" of this case to the bar is heightened by the difficulties and inefficiencies inherent in representing clients who do not speak English and whose labor claims are intertwined with immigration issues requiring counsel to understand immigration law.  *Id.*  This coupled with the significant time commitment required to pursue a complex class wage and hour action made the case undesirable to other counsel not prepared to take on such a commitment without a retainer or fixed fee.  *Id.*

### k.      The Nature and Length of the Professional Relationship

"In describing this factor, the *Johnson* court noted that a lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. at 1153.  Here, counsel did not have a professional relationship with Plaintiff or any Class member prior to the instant litigation.  *Motion* [#62] at 10 (citing *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018) ("As there is no indication that counsel adjusted the agreed fee in this case based on any special relationship with the lead plaintiffs, the Court finds that this factor does not apply in this case.") (internal citation omitted).

### l.      Awards in Similar Cases

This factor has been discussed in connection with the customary fee factor in Section II.3.e. above.

### m.    Conclusion as to Attorney Fees

Weighing the twelve *Johnson* factors, the Court finds that the fee award should preliminarily be approved, particularly given that counsel litigated this case thoroughly and negotiated a settlement that will greatly benefit the Class Members.

### 4.    Conclusion as to FLSA Settlement

Having considered whether the FLSA settlement was reached as a result of a bona fide dispute, whether the settlement is fair and equitable to all parties, and whether the settlement contains a reasonable award of attorney's fees, the Court finds that the FLSA Settlement should be preliminarily approved.  *See Herring*, 2016 WL 7868819, at *2.

### C.    Whether the Service Award is Reasonable

Finally, the Court must determine whether the service award to the named Plaintiff is reasonable.  Representative plaintiffs are eligible for reasonable incentive payments as part of class action settlements.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The Court finds that the $10,000.00 service award here is appropriate because Class Representative Daniel Carrillo took a substantial risk in coming forward with reports of Defendants' wage and hour law violations when no other employees were willing to do

so.  *Motion* [#61] at 15.  Plaintiff is an immigrant to the United States who credibly feared that immigration and workplace consequences might result from early and visible participation in the lawsuit.  *Id.* (citing *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 561 (5th Cir. 2016) ("[E]mployers commonly and unlawfully retaliate against irksome workers by reporting or threatening to report them to immigration authorities.") (citing *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 886-87 (1984); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064-65 (9th Cir. 2004) (collecting cases))).

In addition, Plaintiff materially assisted counsel in reviewing documents, communicating with class members and bringing the case to a successful conclusion to the benefit of all his co-workers.  *Motion* [#61] at 15.  Although Plaintiff was not compelled to testify either by deposition or at a court hearing or to answer discovery, he advocated for the interests of the Class Members and made sure that the interests of the Class were at the forefront of negotiations.  *Id.*  The Court therefore finds that the incentive award sought here is reasonable.  *See, e.g.*, *Ramirez v. El Tapatio, Inc.*, No. 13-cv-00861-REB-BNB, [#58] at 3 (D. Colo. June 13, 2013) (approving $10,000.00 incentive award to class representative in wage class action); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. Aug. 16, 1995) (approving $50,000 participation award to a single class representative); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiffs in a wage and hour case); *Rausch v. Hartford Fin. Servs. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

**D.      Issuance of the Settlement Notice [#61-2]**

Finally, the Court considers the proposed Settlement Notice [#61-2], and included opt-out form, provided by the parties.  The proposed Settlement Notice [#61-2] and opt-out form describe the case, the damages to be awarded to each Class Member, the process by which Class Members may opt-out or object to the settlement, and further informs Class Members of their right to be heard at a final fairness hearing.  Notice under Rule 23 notice is sufficient "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Accordingly, the Court finds that the Settlement Notice [#61-2] should be approved.[2]

### III.  Conclusion

Based on the foregoing, the terms of the Settlement Agreement [#61-1] are hereby preliminarily approved.  The Court finds that the proposed settlement (the "Settlement") is the product of informed arm's-length negotiation by counsel; contains no obvious deficiencies that would prevent preliminary Court approval; bears a reasonable relationship to the claims alleged by Plaintiff and the litigation risks of Plaintiff as well as Defendants; and does not improperly grant preferential treatment to the named Plaintiff or segments of the Settlement Class.  Accordingly, the Court preliminarily finds that the Settlement is fair, reasonable, and adequate, and that the Settlement Class should be given notice thereof.  Accordingly,

---

[2]  The highlighted sections of the proposed Settlement Notice [#61-2], of course, must be completed before it may be issued.  These sections were generally contingent on the issuance of the present Order and concern things such as the date of the Settlement Hearing, deadlines for class members to object or opt-out, etc.

IT IS HEREBY **ORDERED** that the Motions [#61, #62] are **GRANTED** as follows. The parties' Settlement Agreement [#61-1] is preliminarily approved, the parties' Settlement Notice [#61-2] is approved for issuance, and Plaintiff's fee request is preliminarily approved.  Accordingly,

IT IS FURTHER **ORDERED** as follows:

1.      The Fed. R. Civ. P. 23 Settlement Class is defined as "All hourly employees who worked for Defendants between April 28, 2015 and April 28, 2021."

2.      As soon as practicable, but no later than **thirty (30) days** after this Order is entered, the Settlement Administrator shall distribute copies of the completed Settlement Notice [#61-2] to all potential Settlement Class Members.  Potential Settlement Class Members shall have **sixty (60) days** from the date of the Settlement Notice's mailing to opt-out or object to the Settlement Agreement [#61-1].

3.      The Court will hold a Settlement Hearing on **June 21, 2023**, at **1:30 p.m.** (the "Settlement Hearing"), in Courtroom A-401, Fourth Floor, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado, for the following purposes: (a) to determine whether the Court should grant final certification of the Settlement Class solely for purposes of settlement; (b) to determine whether the proposed Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class and should be approved by the Court; (c) to determine whether a Final Order and Judgment should be entered; (d) to make a final ruling on Plaintiff's fee request; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

4.      No later than **twenty-one (21) calendar days** prior to the Settlement Hearing, Plaintiff and Defendants shall file with the Court any papers in support of final

approval of the Settlement.  Copies of all papers shall be served upon all Settlement Class

Members who file a valid and timely objection to the Settlement or their counsel.


DATED: February 3, 2023


BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge